State v. Bittinger.

| 55 | 596 |
|---|---|
| 33a | 514 |
| 55 | 596 |
| 120 | 118 |
| 55 | 596 |
| 125 | 489 |
| 55 | 596 |
| 134 | 15 |
| 55 | 596 |
| 175 | 1 85 |

STATE OF MISSOURI, Appellant, vs. JOHN L. BITTINGER, Respondent.

1. *Construction of statute—Repeals—Remedies when concurrent—When not.*— The settled rule is that if a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was theretofore actionable at common law, this does not take away the common law remedy. And the same rule holds in civil and criminal cases.

2. *Crimes and punishments—Embezzlement—Donations to N. W. Lunatic Asylum—Failure of agent to pay over—What remedy proper.*—An agent of the County of Buchanan who under the act of March 28th, 1872, (Wagn. Stat., 170b, § 7) received a donation to be paid over to the commissioners for the North-western Insane Asylum "as soon as the same should be located at or near the City of St. Joseph, would not be liable to indictment for embezzlement under § 41, Art. 3, of the statute touching Crimes and Punishments (Wagn. Stat., 459–60,) for failure to pay over the' money to the institution before it was permanently located at that point. The proper remedy in case of default in payment of money to that asylum when the same was due, would be a prosecution under § 25, of said act of March, 28th, (Wagn. Stat., p. 170). The agent would also be liable therefor to a civil action.

*Appeal from Buchanan Circuit Court.*

*James P. Thomas,* for Appellant.

I. It is not necessary that the indictment should aver that the Asylum had been permanently located at or near Saint Joseph, Missouri. The location cannot affect either the ownership of the warrant or the money, prior to its delivery to the commissioners, nor the guilt or innocence of respondent. The conversion of the $15,000.00, to his use, and the making away with and secreting the money, constituted a felony under § 41 p. 459–60 Wagn. Stat., at all events.

*Hall & Oliver, and Chandler & Sherman,* for Respondent.

I. The money came into respondent's hands, if it all, under the act of March 28th; and the punishment for violation of that law is provided under § 25 of the act.

The order of the County Court directs payment to the commissioners, "when the Asylum is located at St. Joseph" and not before. The indictment fails to charge that the institution is so located.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted under the 41st section of the statute (1 Wagn. Stat., p. 459, § 41), for embezzlement in converting to his own use, making way with and secreting money belonging to the County of Buchanan to the amount of fifteen thousand dollars. The indictment contained two counts. The first charged that on the 25th day of May, 1872, defendant was appointed, employed, and acting as agent and commissioner of Buchanan county; that said appointment, was made by an order of the County Court entered of record, by virtue of an act of the General Assembly of the State of Missouri, entitled an act to establish an Insane Asylum in the north-west or south-west portion of the State, to be called the North-western or South-western Insane Asylum, approved March, 1872; that by virtue of the above mentioned act, the County Court of Buchanan county donated to the commissioners of the said Asylum, the sum of fifteen thousand dollars, to be paid to said commissioners, as soon as the said Asylum should be located at or near St. Joseph, Missouri; that said County Court issued a warrant, duly signed by the presiding justice thereof, for the said fifteen thousand dollars, payable to defendant or his order; that said warrant was of the value of fifteen thousand dollars, and was by the said County Court delivered to the defendant for safe keeping, and for transfer to the commissioners of said Asylum as soon as the same should be permanently located at or near St. Joseph, Missouri, and was received by the defendant for the purpose aforesaid; that defendant on the 25th day of May, 1872, having the said warrant in his possession for the purposes aforesaid, unlawfully, fraudulently and feloniously converted the same to his own use, made way with and secreted the same. The second count substantially set out the charges the same as in the first, and alleged, in addition thereto, that defendant unlawfully, fraudulently, and feloniously, converted to his own use, made way with and secreted fifteen thousand dollars of the public money, &c. To this indictment the defendant by his counsel filed a demurrer which was sustained by the

court, and final judgment having been entered thereon, the State appealed.

The argument made in reference to. the constitutionality of the act, so far as it gives County Courts power to make donations to the Asylum, has failed to convince us of its soundness. We see nothing in the act of a character which would justify us in holding it unconstitutional in that respect. The only question then, is whether the indictment was properly drawn on the 41st section above referred to. That section is the general law, and provides for all the usual and ordinary offenses coming within its purview and description.

By the 7th section of the law establishing the North-western or South-western Insane Asylum, it is provided as follows: "The commissioners are hereby authorized to receive for the institution gifts, grants, donations and bequests of any property or money from persons, counties, cities, towns or townships in aid of said institution, the title to which, shall be made to and vested in the State, for the use of the Asylum; and the County Court of any county, or corporate authority of any town or city in this State, is hereby authorized to donate any lands, money, bonds or other property to said institution, and the conveyance of any real estate and donation of money, bonds or property to the State for the use and benefit of said Asylum, shall be valid and binding upon the persons, authorities or corporations making the same." (1 Wagn. Stat., p. 170 b. § 7, 3d. Ed.) The 25th section of the same act, declares: "Any person who shall, after demand made, knowingly refuse to pay over or deliver to the commissioners or managers of said Asylum, any money, property or thing belonging thereto, or any person who shall knowingly convert to his own use any money appropriated by law, or any money or property donated or given to said Asylum or to the State for its use and benefit, shall, in addition to his civil liability, be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than five hundred dollars or by imprisonment not less than six months in the county jail, or by both such fine and imprisonment."

It is obvious that this last act gives a remedy for the wrong complained of and the offense charged in the indictment, and the question to be determined is, whether the mode of procedure pointed out in this act is concurrent with the remedy for the offense as it previously existed; or whether it is exclusive. The settled rule is that if a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law; this does not take away the common law remedy, but the party may still sue at common law, as well as upon the statute. In such cases the statute remedy will be regarded as merely cumulative. But where a new right or the means of acquiring it is given, and an adequate remedy for violating it is given in the same statute, then the injured parties are confined to the statutory remedy. (Pot. Dwarr. Stat., p. 275, n. 5.) This principle is illustrated by the case of Lindell's Adm'r vs. Han. & St. J. R. R. Co., (36 Mo., 543.) There, the act amending the company's charter, gave the company "power by themselves or agents to enter and take from any land in the neighborhood of the line of their railroad, earth, gravel, stone, wood or other material necessary for the construction, and operation of said road;" and it provided a specific mode of proceeding by which the damages should be ascertained at the instance of either party, by three impartial and disinterested householders to be appointed by any justice of the peace, with a right of appeal to the County Court. Upon this act it was held that the common law remedy was superseded by the statute and the person injured must pursue the course pointed out therein; that the statute remedy was not merely cumulative upon the common law action, but was an entire substitution for it. This doctrine is sustained by many cases. (Smith vs. Lockwood, 13 Barb., 209; Thurston vs. Prentice, 1 Man. [Mich.], 193; Bassett vs. Carlton, 32 Me., 553; Renwick vs. Morris, 7 Hill., 575; Calkins vs. Baldwin, 4 Wend., 667; Almy vs. Harris, 5 Johns., 175; Dudley vs. Mayhew, 3 Comst., 9.)

It is true that the cases above referred to are civil cases, but the

same rule obtains in criminal practice. Thus, Bishop says: "If the offense existed at common law, yet a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations, then in matters of principle when the aggravated offense thus created out of the old one is made the subject of an indictment, the indictment should be drawn on the statute." (1 Bish. Criminal Prac., § 598, [2nd Ed.] 1; Whart. Crim. Law, § 371.)

In the present case the right and the means of acquiring it were given under the 7th section of the act, and the 25th section pointed out and afforded an adequate and complete remedy for its violation. The former section in express terms gave the County Court power to make the donation, and the latter section is so broad and comprehensive in its scope, that it reaches any and every person whatsoever, who shall, after demand made, refuse to deliver to the commissioners or managers of the Asylum, any money belonging thereto, or who shall convert to his own use any money appropriated by law, or any money given or donated to the Asylum or to the State for its use and benefit. The person so having or converting the money is liable in a two-fold character; first civilly, and secondly, by criminal prosecution for a misdemeanor.

The indictment sets out the order made by the County Court, by which it appears that the sum was donated and appropriated to and for the use of the commissioners of the Asylum, to be paid to the commissioners as soon as the Asylum was located at or near St. Joseph, Missouri; and that the defendant was appointed agent or commissioner for the county, to whom the warrant was to be issued for said use, and to be delivered to, and paid to said institution or to the commissioners thereof, to be used by them in the procuring of the location and lands for the use and purpose of said Asylum, and to be paid as soon as said location was permanently made.

It is then alleged and charged that by authority of the legislative act, and the order of the County Court, the warrant was issued on the treasury of the county for the use of the

commissioners of the Asylum, to pay the donation, and made payable to the defendant or order, for the use above stated and set out. By these averments it is abundantly shown that the warrant was issued upon certain conditions, and that defendant received it with a trust to carry out those conditions. But it is nowhere alleged that the Asylum has been permanently located at or near St. Joseph, a thing which was to happen, before the money was to be delivered over for the use of the Asylum, nor is there any allegation that the warrant or money belonged to Buchanan county. The defendant received the warrant and stood in the capacity of a trustee. It was intrusted to him to be used for a particular purpose, and applied in a certain manner. It might have been competent for the county to have revoked the order and to have called back the donation, but there is no charge that anything of that kind was done. Till such was the case the defendant held the warrant or the money he received thereon for the uses specified, and the only way to proceed against him would be under the provisions of the act establishing the Asylum as heretofore indicated.

Because the indictment does not contain necessary and essential averments, and because it does not appear to have been drafted upon the proper law, the judgment of the Circuit Court will be affirmed. The other judges concur.