## Ohio Valley Fire and Marine Insurance Company v. Wash, Insurance Commissioner.

(Decided December 2, 1924.)

### Appeal from Franklin Circuit Court.

Insurance—Insolvent Fire Isurance Company's Voluntary Assignment for Benefit of Creditors, and Deed of Assignment, Held Void as Unauthorized.—Insolvent fire insurance company's voluntary assignment for benefit of its creditors, and deed of assignment given pursuant thereto, held void as unauthorized under Ky. Stats., sections 752, 753, which provides exclusive remedy for liquidation of insolvent insurance companies, and repeals by implication general law relating to voluntary assignment, as applied to insurance companies.

MOCQUOT & BERRY and HAZELRIGG & HAZELRIGG for appellant.

THOS. B. McGREGOR, Attorney General, O'REAR, FOWLER & WALLACE, J. WOODFORD HOWARD and FRANK DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

The appellant, Ohio Valley Fire and Marine Insurance Company, is a Kentucky corporation and for some time prior to November 13, 1923, had been engaged in the business suggested by its name, with its principal office and place of business at Paducah, Kentucky. Prior to that date it had become involved in financial difficulties which became so acute that it was admittedly insolvent. On that date, acting by its board of directors, at a meeting duly called and by resolution duly adopted and recorded in the minute books, it made a voluntary assignment for the benefit of its creditors and conveyed all its property to an assignee to effect its liquidation and a settlement of its affairs. On the following day A. M. Wash, then the insurance commissioner for the state of Kentucky, instituted in the Franklin circuit court a proceeding, under section 573, Kentucky Statutes, by which he sought, due to the insolvency of appellant, to have it enjoined from further doing business and to have a receiver appointed to take charge of its business, property and effects and to settle its affairs. A temporary restraining order was granted by that court and a summons issued against appellant

notifying it to appear before the judge of that court, at Paris, Kentucky, on November 19, 1923, for a full hearing upon the matters involved. On the hearing had pursuant to that notice, appellant filed an answer admitting its insolvency and pleading its prior assignment for the benefit of its creditors in bar of that court's right to proceed further with the action instituted by the commissioner of insurance. The court below held that under the law an insolvent fire insurance company is without authority to make an assignment for the benefit of its creditors, and appointed a receiver to take charge of the business and property of appellant, with direction that he proceed with its liquidation in the proceeding instituted before it by the appellee insurance commissioner. This appeal is prosecuted from that judgment.

It thus is obvious that the questions presented by the appeal may be answered by determining whether a fire insurance company, admittedly insolvent, created and doing business under the Kentucky Statutes, has the right to make a voluntary assignment for the benefit of its creditors; or whether the method provided by section 753, Kentucky Statutes, by which the affairs of an insolvent fire insurance company may be wound up and settled, is exclusive of all other proceedings for that purpose.

The insurance legislation now in force in Kentucky is embraced in article 4 of chapter 32, Kentucky Statutes, 1922, there being something over a hundred sections of same. It is contended by appellee that the insurance law of this state included therein is all inclusive or the whole law of the subject; that insurance companies have no rights beyond those provided for in those sections of our statutes; that since, among other things, there is provided a complete and an adequate remedy by which the affairs of an insolvent insurance company may be settled and its liquidation be accomplished for the benefit of its creditors, policyholders and stockholders, such proceedings, although not expressly declared to be so, by implication must be held to be the exclusive remedy for that purpose. On the other hand, it is contended by appellant that the sections of the statutes above relating to the question provide only a method by which the insurance commissioner may bring about the liquidation of an insolvent fire insurance company; that the language of the statute providing for such remedy does not expressly and is not broad enough to repeal by

implication the general law on the subject of assignments for the benefit of creditors; that such provisions were not intended to be the exclusive remedy for the liquidation of an insolvent fire insurance company; that it had the right under the general law on the question to make a voluntary assignment for the benefit of its creditors; and that having done so prior to the institution of the action by the insurance commissioner such action was barred and should have been dismissed.

It will be admitted that at the time when the present statutes relating to fire insurance companies were enacted any business concern, whether individual, partnership or corporation, had the right at common law to make an assignment for the benefit of its creditors. To determine the question, then, presented by this appeal, we must determine whether or not by the statutes in question the common law right to make a voluntary assignment was either expressly or by implication repealed. From Grimes, et al. v. Central Life Insurance Company, 172 Ky. 118, we quote the following as embodying the general rules relative to the question here presented:

"The well established rule is, that where a right exists by the common law, and there is a remedy for a violation of that right by the common law, and the statute provides another remedy, the one provided by the statute is not exclusive of the common law remedy, unless the one created by the statute is expressly or by implication made exclusive by the statute. Wells v. Steele, 31 Ark. 219; People v. Craycroft, 2 Cal. 243; Washington, etc. v. State, 19 Md. 239; Bellant v. Brown, 78 Mich. 294; State v. Bettinger, 55 Mo. 596; McKay v. Woodle, 28 N. C. 252; Goodrich v. Milwaukee, 24 Wis. 422.

"If the right is a new one created by statute, and a remedy for its violation is provided by the statute, then the remedy provided by the statute is exclusive of any other. Russell v. Muldraugh's Hill C. & C. Turnpike Road Co., 13 Bush 307; Ky. River Navigation Co. v. Commonwealth, 13 Bush 435; Roberts v. Landecker, 9 Cal. 262; Butler v. State, 6 Ind. 165; Ryan v. Ray, 105 Ind. 101; Chandler v. Hanna, 73 Ala. 390; Cole v. Muscatine, 14 Iowa 296.

"If a remedy for the violation of a right is given by statute, and it is not expressly declared to be exclusive, no implication will arise that it is intended to be exclusive, where it is inadequate for the purpose, and in such cases the ordinary processes of the law may be resorted to. Johnston v. Louisville, 11 Bush 527; Fletcher v. State Capitol Bank, 37 N. H. 369; Murriam v. Moody, 25 Iowa 170."

The current history with reference to the subject then being legislated upon, the evils to be remedied, the objects to be promoted, the state of the laws at that time and the results which would follow from different constructions, all of which may be looked to by us as an aid to the construction of the statutes in question, were elaborately set forth in the learned opinion in the Grimes case, *supra,* and we feel that we need not lengthen this opinion by their repetition. In that case a portion of the stockholders, one of whom was a policyholder in the Central Life Insurance Company, sought to have a receiver for that company appointed to settle its accounts, wind up its affairs and distribute its assets among its creditors, policyholders and stockholders according to their respective rights. The company resisted and, in support of its contention that its adversaries had no authority to institute the action, invoked the provisions of section 753, Kentucky Statutes, contending that by that section of the statutes the common law right of a stockholder and creditor of an insolvent life insurance company to have a receiver appointed and its assets liquidated had by implication been repealed and that that section of the statutes provided the exclusive remedy on the subject. In the opinion in the Grimes case, *supra,* the extent and comprehensiveness of the chapter on insurance was exhaustively set forth, and we feel that we may by reference to that opinion save ourselves the necessity of repetition. We held in that case that the statute in question by implication repealed the common law right of stockholders and policyholders of an insurance company to have a receiver appointed and the affairs of the company liquidated by their action for that purpose. The adequacy of the remedy provided by the statute above to protect the stockholders, policyholders and creditors of such corporations was assigned as the reason for holding that the remedy provided by section 753, Kentucky Statutes, was exclusive.

Appellant contends, however, that in as much as the Grimes case was an effort by a portion of the stockholders and policyholders of that life insurance company to have it declared insolvent and a receiver appointed to wind up and settle its affairs, and in as much as section 753 of the statutes expressly provides for such action by the insurance commissioner upon its being ascertained that the company in question is in an insolvent condition, the remedy there provided for being exactly the same as that sought by plaintiffs in the Grimes case, this court properly held the remedy provided for by the statutes to be exclusive and to be the only action authorized in an attack upon an insurance company to have it declared insolvent and its affairs settled by a court's receiver. But it contends that there is a distinction between such a proceeding and the one instituted by appellant here, where it voluntarily made an assignment for the benefit of its creditors. It contends that the statute in question provided a remedy only for an attack upon an insurance company to have it declared insolvent and its affairs settled by a court's receiver, but that neither expressly nor by implication do the provisions of the act in question repeal the common law or statutory right of this corporation voluntarily to make an assignment for the benefit of its creditors.

By a study of the various provisions of our statutes with reference to the general subject of insurance and with reference to the particular subject of fire insurance and with reference to the creation of the office of insurance commissioner, with the duties and powers conferred upon him, we find that no insurance company, either fire or life, may be created or do business in Kentucky except with the consent and approval of the insurance commissioner. Its charter or articles of incorporation and all the preliminary steps taken toward its creation must be submitted to and be approved by him before authority may be granted to it to do business in Kentucky. Throughout its existence its business and the conduct of its affairs are subject to the approval and supervision of the commissioner. The statutes provide for stated reports to be made to the commissioner by all such companies and for stated examination of the books and affairs of the company by the commissioner. It provides further that the commissioner in his discretion may make more frequent examinations than those required to be made by the statutes. It provides further that at any

time upon the request of five or more of the stockholders, creditors, policyholders or persons pecuniarily interested in such company, who shall make affidavit of their belief, specifying their reasons therefor, that the company is in an unsound financial condition, it shall be his duty to examine the same to determine the question. By section 753 it is provided that if, upon information gained from any such sources, the commissioner has reasons to believe that an insurance company is insolvent, he shall thereupon institute an action either in the circuit court of the county wherein the chief office of the company is located or in the Franklin circuit court to enjoin its further engaging in business and have a receiver appointed for its liquidation and a distribution of its assets according to the respective rights of its creditors, policyholders and stockholders. It could not be maintained that an insurance company could be created in Kentucky other than in strict compliance with the provisions of the statutes relative to the duties of the insurance commissioner in respect to the creation of such corporations. It could not be maintained that such a corporation engaged in the insurance business could continue its business life in Kentucky in defiance of our statutory laws on the question without submitting to the constant supervision of its affairs by the insurance commissioner. It seems to us that our statutes just as effectively provide for supervision by the insurance commissioner of the liquidation of an insurance company that has become insolvent or financially ill as they do for his supervision of their creation and business life while in a state of financial health. It seems to us that the legislature intended by the chapter of the statutes in question to provide for the creation and the business life of insurance corporations and for their liquidation when they become insolvent, all to be under the supervision of the insurance commissioner. We cannot understand that there is to be drawn a distinction between an action by stockholders or creditors of an insurance company to have it declared insolvent and its affairs wound up by a court's receiver and an action upon the part of such company when in an insolvent condition voluntarily to make assignment for the benefit of its creditors. The object sought is the same whether the action be one directed against an insolvent insurance corporation in a proceeding for the appointment of a receiver or be one by its voluntary assignment for the benefit of its cred-

itors. The object of either proceeding is the liquidation of its assets. It seems to us that the legislature had in mind, taking into account the public nature of the business, the enaction of a complete law on the subject for the protection of the public, the policyholders, the stockholders and the creditors of insurance companies. It assumed that there would be appointed to the office it created, that of insurance commissioner, only men of character and business qualifications commensurate with the importance of the office. Evidently it was intended by the statutes in question to invest in the commissioner the supervision not only of the creation and business life of such corporations, but also such supervision of the liquidation and distribution of the assets of any such company as might become insolvent. The language of the statutes in question, considered with the evils to be remedied and the objects sought to be promoted, leave us in no doubt that such was the legislative intent. It would be inconsistent with that, as we think, clearly expressed legislative intent to hold that the provisions of the insurance statutes providing for the liquidation of an insolvent insurance company do not by implication repeal the general law with reference to voluntary assignments in so far as insurance companies are concerned. If we should so hold the clearly expressed legislative intent that the liquidation of an insolvent insurance company shall be under the supervision of the insurance commissioner is impotent. A voluntary assignment would defeat that express provision of the insurance statutes, because by a voluntary assignment all the assets of such a company would be conveyed to an assignee who would proceed to liquidate them independent of any character of supervision by the insurance commissioner. The remedy provided by sections 752 and 753, Kentucky Statutes, 1922, is amply adequate to protect the interests of the public, the policyholders, the creditors and stockholders of all insurance companies in the liquidation of an insolvent insurance company. We conclude that the remedy there provided was intended by the legislature to be exclusive or the "whole law" of the question, and that by implication the general law with reference to voluntary assignments was repealed in so far as insurance companies are concerned. It follows that the attempt on the part of appellant, when admittedly insolvent, to voluntarily assign

for the benefit of its creditors was without authority and that the deed of assignment was void.

The judgment of the lower court being in accord with our conclusions herein expressed, is affirmed.

The whole court sitting.   Judge Thomas dissenting.

### Dissenting Opinion by Judge Thomas.

Believing that the opinion of the court in this case has wandered far afield through a misapplication of the rules governing implied repeals or the substitution of new remedies for old ones, whether the latter exist by reason of common law provisions or statutory enactments, and, further, believing that to adopt such a course is almost, if not actually, a revolutionary departure from the power, authority and duty of courts, I am impelled to express my dissent herein; and in doing so I shall not attempt an extensive elaboration of the questions involved and will content myself with only a statement of some of the fundamental reasons for my disagreement.

Section 753 of the statutes, which it is claimed in the opinion has the all-sweeping effect given to it therein, is a part of an act passed by the General Assembly and became a law on April 5, 1893.   There is not a line in any section of that act which intimates that it was the purpose and intention of the legislature, either in the one creating the Insurance Department of the state, or any other part of it, to accomplish any more than to authorize a veto by the insurance commissioner upon corporations embarking in the business of insurance; to provide for his supervision over a going concern engaged in such business, and the power given in section 753 to the commissioner to *force* an insolvent insurance company into liquidation, which of course is an *involuntary* liquidation so far as the company is concerned.   That was the situation in the case of Grimes v. The Central Life Insurance Company, 172 Ky. 18, upon which the majority opinion is rested, and I do not read that opinion as going any further or deciding any other question except the one arising from the facts therein appearing.   If, however, there could be found in it any sentence or clause attempting to adjudicate a different state of facts, it could not otherwise be classed than dictum.   The question there presented was, whether one or a number of interested persons who at common law had the right

under certain facts, and which were acknowledged to exist in that case, could, under such right, *enforce* an involuntary liquidation of the affairs of an insurance company, and it was held that the section of the statute, *supra,* provided the exclusive remedy for the procurement of that character of compulsory relief. However, in doing so, two former opinions of this court were overruled and there was a dissent by one member of this court. It is not my purpose, however, to criticize the soundness of that opinion as to the conclusion it reached on the *specific* point involved. There were, to say the least, persuasive reasons, which are set out in the opinion, for that conclusion, and I am not prepared to say, nor do I say, that it was not arrived at according to well established rules pertaining to repeals by implication, or for holding new remedies as exclusive and abolishing old ones.

The outstanding and evident purpose of the act of 1893 relating to insurance was to protect policyholders and investors in the stock of insurance companies from the consequences of their either embarking in business or continuing in business if financially weak or insolvent, and the remedy given by section 753 of the statutes was the one whereby such continuance in business might be stopped, and future policyholders and investors in the stock of the company might be protected from inevitable financial loss. And so, it is provided in the statute that no company could engage in business until the insurance commissioner was convinced that at the time of commencement it was, according to his opinion, financially sound and its proposed method of conducting its business was not calculated to impair that soundness; but, if from any cause the resources of the company did become impaired or it financially involved so that to continue in business would not only imperil parties already interested but would likewise ensnare others to become interested, then the commissioner was authorized to *force* the company to cease to do business and liquidate its affairs. It would, therefore, seem that if the purpose to be accomplished by the act, *i. e.,* ceasing to do business and the liquidation of its affairs, had already been voluntarily entered upon by the company pursuant to an ancient right *regulated by statute in this state* and which was enacted nearly a year after section 753 was enacted, then there could be no reason for holding that the provisions of that section were exclusive in that case, or

that it had the effect to repeal the common law remedy of voluntary assignment for the benefit of creditors, which appellant attempted to do in this case.

As late as the very recent case of Ex Parte Lawrence, 204 Ky. 568, this court held that "repeals by implication are not favored by the courts and that a statute will not be construed as repealing a prior statute unless it is so clearly repugnant thereto as to admit of no other reasonable construction." That rule is as ancient as the law itself, and has been recognized and applied by this court in *every* case where the question was involved. But it is said that the right to make a voluntary assignment for the equal benefit of all creditors is in this state not of statutory creation, but that the procedure for such voluntary liquidation is a creature of the common law. Be it so; still our statute, being sections 74-96, both inclusive, and which as I have said were enacted nearly a year after the creation of the remedy now held to be exclusive, recognized at that time the right of *all* insolvent debtors to enter into *involuntary* liquidation for an equal distribution of their assets to their creditors through the process of a voluntary assignment for that purpose. That regulatory act recognized as effectually the common law right prevailing in this jurisdiction as if it had been of statutory creation, and futher recognized the right at that time for all debtors, including insurance corporations, to avail themselves of such proceedings by complying with the provisions of the statute; and it is to be presumed that if the legislature intended to withhold the right from insurance companies of making a voluntary assignment for the benefit of their creditors, because such proceedings were elsewhere lodged in an act passed nearly a year prior thereto, it would have indicated such purpose or intent in some manner somewhere in the later act regulating assignments. It did not do so, and, under well recognized rules, it does not behoove this court to make an exception by a strained construction when no such purpose was even remotely intimated by the legislature in the enactment of our insurance statute.

But it may be said that the principles above discussed are not applicable, since the right to make a voluntary assignment for the benefit of creditors is not a statutory one, and that the rule disfavoring implied repeals does not apply in such a case. In answer to that I need but refer to the Grimes opinion, as well as to the

majority opinion, which quotes and adopts therefrom this statement: "The well established rule is, that where a right exists *by common law,* and there is a remedy for a violation of that right by the common law, and the statute provides another remedy, the one provided by statute is not exclusive of the common law remedy, unless the one created by the statute is expressly or by implication made exclusive of the statute." (Our italics.) The rule against exclusiveness of newly created remedies is in fact more imperative than as stated in the excerpt from that opinion. The correct one is, that the remedy will not be construed as exclusive unless it is expressly or by *necessary* implication made so. As applied by the courts, it is thus stated in 25 R. C. L. 1058: "An existing common law remedy is not to be taken away by a statute unless by direct enactment or necessary implication. . . .

Where a statute prescribes a remedy for a matter that is actionable (or for relief without suit or action) at common law, without excluding the common law remedy either expressly or by necessary implication, the statutory remedy is regarded as merely cumulative and either the common law or the statutory remedy may be pursued." A great many cases are cited in notes 14 and 17 to the text, and there appears to be no dissent from the correctness of that statement. The rule is of equal fixedness and observance as the one relating to repeal of statutes by implication, and I take it that a newly created remedy will not be construed as exclusive as applicable to a particular state of facts any more readily than will a subsequent statute be construed to repeal a prior one by implication. That conclusion seems to be inevitable.

Applying then those rules to the situation we have here, it will be found that the remedy, which it is claimed section 753 created as an exclusive one and which impliedly repealed all others, was itself enacted nearly a year before the enactment of our statute relating to *voluntary* assignment for the benefit of creditors, which, as has been seen, recognized the right of all creditors to avail themselves of its provisions. And so far as I am concerned I have yet to find or be shown any case or any text writer holding or saying that a prior created or enacted remedy is exclusive of one which the legislature later recognizes as in existence; or that a prior statute repeals by implication a subsequent one which was enacted at a different session of the legislature.

If, however, this case did not involve any of the questions or points to which I have referred, the question would then be, whether the remedy provided by section 753 of the statutes should be construed as sufficiently comprehensive to include *voluntary* liquidation by the process of a voluntary assignment made by the creditor when the section, as has been pointed out, relates to and purports to deal *only* with insolvent insurance companies that insist on a continuance of their business and to permit them to do so would result in the mischief and disastrous consequences heretofore referred to. Since, therefore, the voluntary ceasing to transact future business and invoking a procedure to equally divide its assets among those entitled thereto according to their rights, can be as speedily, as well as effectually, accomplished by such voluntary assignment as by the remedy herein held to be exclusive; and, since by either method of procedure the mischief intended to be prevented by the statute is circumvented and its purpose in that regard accomplished, I am unable to find any ground for holding, as does the majority opinion, that the method of liquidation provided for in the statute is by implication made exclusive, except as to involuntary liquidation with which the statute deals, leaving the common law right of a debtor insurance company to make voluntary assignment for the benefit of all its creditors, as regulated by our statute, still in existence and not either repealed or substituted by that statutory method, relating only to an enforced liquidation. Neither does the Grimes case, as hereinbefore pointed out, decide anything to the contrary, but confined itself only to the remedy of *involuntary* liquidation, which is the only character of liquidation, I again repeat, dealt with in the statute and the only one involved in that case. The reason why the legislature in our statute relating to insurance did not attempt to deal with voluntary assignments for the benefit of creditors, or to substitute that right with the provided remedy in section 753, was because as heretofore intimated, the purpose of the statute was accomplished when power and authority was given to the insurance commissioner to force an insolvent insurance company to cease doing business; but when by its voluntary act it had itself ceased to do business and had entered upon an appropriate and recognized procedure whereby its affairs might be as appropriately and effectually liquidated and settled, there no longer existed any occasion for the stat-

utorily provided *enforced* liquidation, and the well known maxim, that "When the reason ceases the law ceases," should be invoked.

I will content myself by citing only one (and there are many) illustration of the necessary result of the majority opinion, and which must logically follow if it is sound, and which is patently evident to my mind was never contemplated. Section 1906 of our statutes is what is commonly known as "The statute of 1856," and it provides for any creditor, by complying with the statute, to cause or have decreed a preferential act by his debtor to operate as a general assignment for the benefit of all his creditors. If such voluntary assignments as to insurance companies no longer exist, as the majority opinion holds, then section 753 has the effect to repeal the act of 1856 in so far as it applies to insurance companies; and I wonder what would be the remedy of a creditor, who had been thus defrauded, under the enunciation of the majority opinion. It is true he is entitled to one, and no doubt hereafter if a similar case is presented, this court will write out one for him, but, according to my conception, it will find itself enmeshed in great entanglements in its effort to do so. I might continue by pointing out reasons why I think the majority opinion is incorrect, but since dissenting opinions are of no value save and except to chronicle the reasons for the dissent, I will refrain from doing so, and will conclude by summarizing that (1), neither repeals by implication nor exclusiveness of newly created remedies are to be upheld except where the language which it is claimed does so is clearly susceptible of no other interpretation; (2), that no statute can repeal, by implication or otherwise, a subsequently enacted one, and upon the same principles a statutory remedy cannot be construed to be exclusive of even a common law one which was subsequently recognized by statute, and (3), that the alleged repealing statute, as well as the one creating the exclusive remedy, can be given no such effects upon circumstances and conditions not dealt with therein, but they should be confined to the facts to which their terms expressly apply, and no construction should be given enlarging their scope so as to include and provide for situations already taken care of by existing appropriate and proper remedies.

For the foregoing reasons, and believing that the doctrine of the majority opinion constitutes a wide departure from judicial authority, as heretofore recog-

nized and observed, I must respectfully dissent from the majority opinion, but expressing no disapproval of the Grimes opinion, as applicable to the facts and the remedy therein dealt with.