[L. A. No. 19726.   In Bank.   May 16, 1947.]

MORRIS ORLOFF, Appellant, v. LOS ANGELES TURF
CLUB, INC. et al., Respondents.

William Katz and David S. Smith for Appellant.

Victor Ford Collins for Respondents.

CARTER, J.—Plaintiff commenced this action for injunction relief, alleging in his complaint that defendant, Los

Angeles Turf Club, a corporation, is engaged in operating a horse racing course and enterprize and a gambling establishment in connection therewith, and invites the public to attend. In January, 1946, plaintiff, an adult, purchased a ticket for admission to the defendant's place of business and was admitted thereto. Thereafter plaintiff was ejected from the establishment by defendant and its employees. In February, he was again admitted thereto and was again ejected. The ousting of plaintiff was without cause, he being of a good moral character and having conducted himself properly at all times. At the time of the ejections above mentioned "defendants and each of them unlawfully ordered plaintiff not to return to said race course thereafter, and unlawfully threatened to thereafter refuse to admit plaintiff thereto, or if admitted to forcibly remove and eject plaintiff therefrom." By reason of defendant's conduct, plaintiff was humiliated and embarrassed and sustained mental anguish.

Defendant's demurrer was sustained with leave to plaintiff to amend his complaint to claim only damages. Upon his refusal so to do, a judgment dismissing his action was entered and he appeals therefrom.

Plaintiff's action is based upon the so-called civil rights statutes. Generally it is provided that all citizens are entitled to full and equal accommodations, advantages, facilities, and privileges of places of amusement and accommodations subject to conditions and limitations established by law applicable to all alike. (Civ. Code, § 51.) And whoever denies the privileges accorded by the foregoing, except for reasons applicable alike to every race and color, or discriminates on the latter ground, is liable in damages for not less than $100, which may be recovered in an action at law. (Civ. Code, § 52.) But in addition to those provisions (and in view of the result reached herein, we do not decide whether or not they are available in the case at bar), there are specific statutory mandates which are here applicable. "It is unlawful for any corporation, person, or association, or the proprietor, lessee, or the agents of either, of any opera house, theater, melodeon, museum, circus, caravan, *race course,* fair or other place of public amusement or entertainment, to refuse admittance to any person over the age of twenty-one years, who presents a ticket of admission acquired by purchase, or who tenders the price thereof for such ticket, and

who demands admission to such place. Any person under the influence of liquor, or who is guilty of boisterous conduct, or any person of lewd or immoral character, may be excluded from any such place of amusement.'' [Emphasis added.] (Civ. Code, § 53.) The following section reads: ''Any person who is refused admission to any place of amusement contrary to the provisions of the last preceding section, is entitled to recover from the proprietor, lessee, or their agents, or from any such person, corporation, or association, or the directors thereof, his actual damages, and one hundred dollars in addition thereto.'' (Civ. Code, § 54.) And it is that section which is invoked by defendant as establishing the exclusive remedy for the violation of section 53. It is argued that the right established by section 53 was unknown at common law (a question we do not decide); that it is therefore in derogation of the common law, and hence must be strictly construed to the end that the remedy provided by section 54 is exclusive. Thus preventative or specific relief such as injunction or mandamus is not available in the instant case inasmuch as $100 and compensatory damages are the only remedies available.

Defendant relies upon the rule of statutory construction, that where a new right,—one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others. (See *Weber* v. *Pinyan*, 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407]; *Walker* v. *Chanslor*, 153 Cal. 118, 127 [94 P. 606, 126 Am.St.Rep. 61, 17 L.R.A.N.S. 455]; *Russell* v. *Pacific Railway Co.*, 113 Cal. 258 [45 P. 323, 34 L.R.A. 747]; *Lynch* v. *Butte County*, 102 Cal. 446 [36 P. 806]; *County of Monterey* v. *Abbott*, 77 Cal. 541 [18 P. 113, 20 P. 73]; *Reed* v. *Omnibus R. R. Co.*, 33 Cal. 212; *Latham* v. *Blake*, 77 Cal. 646, 655 [18 P. 150, 20 P. 417]; *State of California* v. *Poulterer*, 16 Cal. 514; *Roberts* v. *Landecker*, 9 Cal. 262; *Ward* v. *Severance*, 7 Cal. 126; *People* v. *Craycraft*, 2 Cal. 243 [56 Am.Dec. 331]; *Wilkes* v. *City etc. of San Francisco*, 44 Cal. App.2d 393, 397 [112 P.2d 759]; *Cook* v. *Superior Court*, 12 Cal.App.2d 608 [55 P.2d 1227]; *County of Alameda* v. *Freitas*, 8 Cal.App.2d 653 [48 P.2d 165]; *Estate of Troy*, 1 Cal.App.2d 732 [37 P.2d 471]; *Estate of Ward*, 127 Cal.App. 347, 354 [15 P.2d 901]; 1 Cal.Jur. 381; 59 C.J. 1110, 1129; 1 C.J.S. Actions, § 6; 50 Am.Jur. Statutes, § 596; 1 Am.Jur. Actions, § 12.) We are not concerned in the instant case (as

is true in many of the cases above cited) with a situation where the statute conferring the right imposes conditions precedent to be met in order to protect the right, or establishes specialized and detailed procedure for enforcing it, or special procedure for enforcing a penalty or forfeiture is provided for therein. The statute (§ 54) merely provides that $100 as well as compensatory damages may be recovered. These are not conditions precedent nor do they constitute any form of unusual procedure required to obtain relief. They certainly do not expressly exclude the availability of preventative—specific—injunctive relief. The only basis for holding that such an exclusion was intended, would be an assumption by this court that other remedies are excluded, or the drawing of an inference to that effect by reason of some rule of statutory construction. ▮ The rule of statutory interpretation here invoked is a corollary of, a consequence flowing from, or a specific application of, the general common law rule of statutory construction that statutes in derogation of the common law will be strictly construed. (*Thompson* v. *Thompson,* 218 U.S. 611 [31 S.Ct. 111, 54 L.Ed. 1180] ; Crawford, Statutory Construction, § 265; Sutherland, Statutory Construction [3d ed.] Horack, § 5812.) But that rule does not prevail in this state, at least, as to the provisions of the four original codes. The statute in the instant case is in the Civil Code and it is provided therein: ''The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to *effect its objects and to promote justice.*'' [Emphasis added.] (Civ. Code, § 4.)

▮ A factor of importance in interpreting the statute and in applying the above mentioned rule of statutory construction is the adequacy of the remedy provided by the statute. It has been intimated in regard to the rule of statutory interpretation here discussed, that it should not apply when the remedy provided by statute is inadequate. (See *Lynch* v. *Butte County,* 102 Cal. 446 [36 P. 806] ; *Steves* v. *Robie,* 139 Me. 359 [31 A.2d 797] ; *Ohio Valley Fire & Marine Ins. Co.* v. *Wash,* 205 Ky. 819 [266 S.W. 921] ; *Grimes* v. *Central Life Ins. Co.,* 172 Ky. 18 [188 S.W. 901] ; *Hickman* v. *City of Kansas,* 120 Mo. 110 [25 S.W. 225, 226, 41 Am.St.Rep. 684, 23 L.R.A. 658].) A recovery of compensatory damages

and $100 is plainly inadequate relief in a case of this character. (See, discussion, 29 Harv.L.Rev. 93; 29 Harv.L.Rev. 640; 39 Ill.L.Rev. 144; 30 Cal.L.Rev. 563, 567.) Compensable damages would be extremely difficult if not impossible to measure and prove. The sum of $100 is a relatively insignificant recovery when we consider that a positive and unequivocal right has been established and violated. It has been held (although dealing with exclusions from public places where there are discrimination on the basis of race or color) that preventative—specific relief is available where a public agency operates the public place. (*Stone* v. *Board of Directors of Pasadena,* 47 Cal.App.2d 749 [118 P.2d 866], in which mandamus was allowed.) Constitutional basis may exist for preventing such discrimination but that is not a factor of sufficient force to deny similar relief where such discrimination does not exist. The right of admission to the places designated is clearly and positively stated (Civ. Code, § 53) and the inadequacy of the remedy provided in section 54 is manifest in both cases. If the objects of the Civil Code are to be effectuated, and justice promoted as required by section 4 thereof, certainly specific relief should be available where the object is to prevent the exclusion of persons from certain places and there are no valid reasons why such relief should be denied.

Reliance is placed upon *Woolcott* v. *Shubert,* 90 Misc. 474 [154 N.Y.S. 643], and *White* v. *Pasfield,* 212 Ill.App. 73, holding that a similar statutory remedy provided for in civil rights statutes is exclusive. Those cases failed to take into consideration the factors herein discussed which we believe are of controlling significance and should therefore not be followed.

It is urged that the allowance of the recovery of $100 in addition to actual damages is a penalty (a question we need not decide) and that therefore it is the exclusive remedy. That is merely another application of the rule of construction heretofore discussed. The statute does not purport to fix a certain procedure to be followed to recover a penalty. In *Greenberg* v. *Western Turf Assn.,* 140 Cal. 357 [73 P. 1050], the court dealt with a statute (Stats. 1883, p. 220), the forerunner of the Civil Code sections here pertinent, the provisions of which with respect to remedies were identical. In that case plaintiff claimed that he could recover punitive damages as well as actual damages and the $100 penalty provided in the statute. This court agreed, stating (at p. 363):

"The court instructed the jury in accordance with section 3294 of the Civil Code, to the effect that if they found the defendant had been guilty of oppression, fraud, or malice, actual or presumed, they might, in addition to actual damages, give damages for the sake of example and by way of punishing the defendant. It is contended that as the statute [like Civ. Code, § 54] itself provides that the plaintiff for the wrongful act may recover one hundred dollars in addition to his actual damage, this was error, *in that the law itself* had fixed the amount, and thus liquidated the punitive damages which may be permitted, and that the instruction thus authorized the jury *to give additional punitive damages in excess of those permitted by the law.* We think, however, that this objection is not well taken. The statute, it is true, allows to the plaintiff one hundred dollars in addition to his actual damage. This sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. But it will be noted that it is a penalty imposed in any and in every case, whether the rejection or refusal of admission was or was not done under circumstances of oppression or violence. The courteous refusal as much exposes a defendant to this penalty of the law as would a brutal expulsion. Moreover, while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged. It is a matter aside and apart from any consideration of the plaintiff's feelings. *It does not, therefore, exclude the operation of section 3294 of the Civil Code, but that section runs current with it,* and, notwithstanding the imposition of the one hundred dollars penalty, in any proper case a plaintiff may recover damages, given by way of example for the personal indignity and wrong which have been put upon him." [Emphasis added.] Likewise we see no valid reason why equitable relief is excluded by the provisions of the existing statute.

We conclude, therefore, that the statutes here involved do not purport to exclude all other remedies for the violation of the right conferred. ■ There remain, however, questions of the propriety of injunctive relief in the case at bar, a matter hinging upon the general principles circumscribing relief in equity.

It has been said in many cases, following without particular analysis or consideration of the justice, expediency, or basis, if any, of the rule, a casual remark of Lord Eldon, in *Gee* v. *Pritchard,* 2 Swanst. 402, 36 Eng.Rep. 670, that equity only protects property rights, not personal rights. (See Kerr, Injunctions [2d ed. 1880], §§ 1-2, 13; Bispham, Principles of Equity [5th ed. 1893], 584, n. 2; 1 High, Injunctions [4th ed. 1905], 34; 14 A.L.R. 295; 1 L.R.A.N.S. 1147; 37 L.R.A. 783; 34 Harv.L.Rev. 388, 407; 29 Harv.L.Rev. 640; 33 Yale L. Journal 115.) But it has also been stated that: "It is clear that equity protects many rights of a personal character whenever they are rights of substance, often classifying them as property rights in order to bring them within the earlier cases holding that equity will protect property rights only. Business rights of all kinds discussed in the preceding chapter are not property in the legal sense. Nevertheless they are valuable rights of economic value, and the reasons for protecting them are identical with the reasons for protecting property rights in lands or chattels. In the usual cases of torts arising from violations of purely personal rights the reasons for denying relief in equity are clear. It is obvious that the injunction is not needed to restrain threatened assaults, disturbances of the peace, and other petty interferences with the person. The criminal law and the police afford all the relief required in such cases. It is clear that injunctions in negligence cases would be absurd.

"We have seen that equitable relief against torts involving injury to property is comparatively a modern development, and protection of rights of substance in business is a development of the immediate past which is still in full motion. After centuries of inaction equity has slowly but steadily extended specific relief in tort cases, at first in protecting strictly property rights, later extending this protection to business rights as rights of substance though not constituting property in the strict sense. It is not surprising that the principle should have been laid down repeatedly by the courts that equity will never interfere to protect purely personal rights. Where relief at law is just as inadequate in cases of personal torts as is such relief in cases of torts to property, there is a strong tendency in the later cases to extend equitable relief to those cases just as such relief has been extended to protect property rights and rights of substance." (Walsh, Equity, p. 259.) (See, also, 29 Harv.L.Rev. 640; 39 Ill.L.Rev. 144;

28 Am.Jur. Injunctions, § 71; 17 Cal.L.Rev. 681; 33 Yale L. Journal 115; 34 Harv.L.Rev. 388, 407; 30 C.J.S., Equity, §§ 51, 58; McClintock, Equity, §§ 152 et seq.; 14 A.L.R. 295; Rest., Torts, § 937.) And there are many instances in which equity has protected purely personal rights (see above references) though in some the courts have reached that result by finding fictional property rights—declaring things property rights which were in truth not of that character (see references, *supra*). On principle it is difficult to find any sound reason for the enunciation of a broad principle that equity will not protect personal rights. There may be situations involving personal rights in which equity will not act. Such situations may arise where the legal remedy is adequate or they may involve a prior restraint on freedom of speech or press (see *Dailey* v. *Superior Court*, 112 Cal. 94 [44 P. 458, 53 Am.St.Rep. 160, 32 L.R.A. 273]; *Magill Bros.* v. *Building Service etc. Union*, 20 Cal.2d 506 [127 P.2d 542]) or where there is no established legal right to be protected or some other recognized ground for refusing an equitable remedy is present. The issue should not in logic or justice turn upon the sole proposition that a personal rather than a property right is involved. To so reason, is to place property rights in a more favorable position than personal rights, a doctrine wholly at odds with the fundamental principles of democracy. These concepts of the sanctity of personal rights are specifically protected by the Constitutions, both state and federal, and the courts have properly given them a place of high dignity, and worthy of especial protection. (See *Carter* v. *Bradshaw* (Tex.Civ.App.), 138 S.W.2d 187; *Hawks* v. *Yancey* (Tex.Civ.App.), 265 S.W. 233; *Foley* v. *Ham*, 102 Kan. 66 [169 P. 183, L.R.A. 1918C 204]; *Thompson* v. *Smith*, 155 Va. 367 [154 S.E. 579, 71 A.L.R. 604]; *Stark* v. *Hamilton*, 149 Ga. 227 [99 S.E. 861, 5 A.L.R. 1041].)

In California it has been said generally that: "It is doubtless true that jurisdiction in equity is primarily concerned with the protection of civil property rights in those cases wherein the law has failed to provide an adequate remedy. But it is not and never has been strictly limited to this field." (*In re Wood*, 194 Cal. 49, 54 [227 P. 908].) And the statutory provision on injunctions states: "An injunction may be granted in the following cases: . . . . 2. When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste,

or great or irreparable injury, *to a party* to the action; . . . 4. When pecuniary compensation would not afford adequate relief; 5. *Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief,"* [Emphasis added.] (Code Civ. Proc., § 526), which rather than limiting injunctive relief to property rights indicates that personal rights as well may be protected.

The positive declaration of the personal right and the importance of its preservation together with the inadequacy of the remedy by way of damages and the $100 penalty furnish sufficient reason for injunctive relief.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied June 12, 1947. Edmonds, J., voted for a rehearing.