(49 South. 214.)

No. 17,546.

STATE ex rel. TAX COLLECTOR v. FALKENHEINER et al.

(April 26, 1909.)

1. INTOXICATING LIQUORS (§ 116*)—SALOONS—CONDUCT OF BUSINESS—SEPARATE BUILDINGS REQUIRED.

The sale of intoxicating liquors to whites and colored, to be consumed on the premises, cannot be conducted in one building. Bars, separated one from the other in one building, do not come within the provision of the statute requiring that the business be conducted in separate buildings.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 126; Dec. Dig. § 116.*]

2. INTOXICATING LIQUORS (§ 55*)—LICENSES.

If a person conducts two saloons, one for the whites and the other for negroes, he owes two licenses. The law cannot be avoided by conducting two separate barrooms in the same building.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 55; Dec. Dig. § 55.*]

3. CONSTITUTIONAL LAW (§ 296*)—STATUTES (§ 114*)—DUE PROCESS OF LAW—TITLES OF ACTS—ALLEGED UNCONSTITUTIONALITY.

Act No. 176, p. 236, of 1908, does not violate article 2 of the state Constitution and the fourteenth amendment, and it is in line with the requirement of article 31 of the state Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 826; Dec. Dig. § 296;* Statutes, Cent. Dig. § 148; Dec. Dig. § 114.*]

4. INTOXICATING LIQUORS (§ 55*)—LICENSES—SEPARATE BARS.

The state cannot compel the payment of two licenses instead of one, in view of the facts; defendant is not at liberty to continue the business in one building.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 55; Dec. Dig. § 55.*]

(Syllabus by the Court.)

Appeal from Tenth Judicial District Court, Parish of Concordia; John Stirling Boatner, Judge.

Rule by the State, on the relation of the Tax Collector, against Charles Falkenheiner and others to show cause why he should not pay a liquor license. Judgment for defendants, and relator appeals. Affirmed.

Nathan Meredith Calhoun (Robert Dabney Calhoun, of counsel), for appellant. John Stirling Boatner, Jr., and Tullis & Reeves, for appellees.

BREAUX, C. J. The tax collector of the parish of Concordia is the plaintiff in rule against Charles Falkenheiner, calling upon him to show cause why he should not pay a license of $200.

The state avers that he retails liquors in quantities less than five gallons in the town of Vidalia, under one state license, in different buildings; in one he sells to white persons, and in the other to negroes, to be consumed on the premises.

In addition to the license, the state claims a lien, penalties, attorney's fees, and costs.

Defendant controverts plaintiff's allega-

tions, and denies that the state has the right to two licenses, as he is conducting one business and is liable for the payment of one license, which he has paid.

In the alternative, he urged that if held liable for this additional license it will be in violation of article 2 of the Constitution of Louisiana and of the fourteenth amendment of the Constitution of the United States.

### Statement of Facts.

An agreed statement of facts between counsel gives additional force and meaning to the pleadings.

The defendant sells liquors for consumption on the place where sold to whites and negroes in the same building, but in separate apartments of the building, and for this business of thus selling one license has been paid by him.

The apartments are separated by a partition in which there are no doors and no inside communication, only an opening in the partition behind the counter solely for the use of the proprietor and his employés, attendants in serving customers. The frequenters of the bar in one of the apartments cannot go into the other apartment unless they choose to step outside of the building and re-enter it through the front door on the street.

In each apartment the saloon is complete. It has a bar, fixtures, furniture, and all that makes up a saloon.

We will here mention that the license to defendant contains no reference to color; no mention is made of the privilege to sell to whites or to negroes, or to both.

### Discussion and Judgment.

The law adopted to regulate the business of conducting a barroom is before us for interpretation.

The sale of intoxicating liquors to whites and negroes to be consumed on the premises cannot be conducted in one building. If a saloon keeper wishes to sell to whites and to negroes, to be consumed on the premises or at the bar, he must open two saloons in separate buildings. A building cannot be construed as being two buildings. A building as mentioned in the statute of 1908, p. 236, No. 176, cannot be made two buildings by judicial construction, nor can it be made two buildings by putting up a partition wall separating an apartment of the one building into two.

The defendant is not conducting the business in two buildings. He is conducting the business of selling liquor to the whites and to the negroes at separate bars in the same building. He does not sell to all comers over his counter, but sells to the whites in the apartment in which the saloon for whites is kept, and to the blacks in the other, divided off as before mentioned.

The contention of defendant that there are two buildings meets with an answer in a provision of the statute cited supra.

This provision sets out in regard to groceries and saloons that if both a grocery and a saloon are kept in one building they must be separated from each other by a solid partition from floor to ceiling, a double-acting door behind the counter for the use and convenience of the proprietor and his male help only.

This is the one building provided for by the statute.

After having thus treated the subject of one building, in the section following, the Legislature provided that the saloon keeper who wishes to sell to the whites and to the negroes shall conduct a saloon in separate buildings.

There is here marked difference between the two.

If they had intended to permit the conducting of two barrooms in one building, one for the whites and the other for negroes,

they would have made the same provision as above in regard to the partition.

This for evident reasons they did not choose to do.

A dividing wall would have the effect of changing one building into two buildings.

But the contention more particularly here is that the defendant is conducting one business, that of selling intoxicants, and that he has complied with the requirement of the statute by selling to whites from one counter and to the negroes from the other, entirely separate the one from the other, and that is a substantial compliance with the provision of the statute upon the subject.

This was the opinion of our learned Brother of the district court.

It may have something to recommend it for all we know, and it might be considered, were it not that it is in direct conflict with the plain requirement that such saloons shall be conducted in separate buildings.

We again state, under the statute, the sale of intoxicating beverages for consumption on the premises to whites and negroes is not permitted.

Learned counsel for the defendant compares the statute in hand for interpretation to the Jim Crow railway and car laws, and in substance stated that the intention of the Legislature was to extend those regulations applying to railway and street cars to saloons, so that we would have a Jim Crow saloon as well as a Jim Crow car, applying the name "Jim Crow cars" to the screens in the cars to separate railroad cars.

The statute regarding the separation of the whites and negroes in cars is clear and unambiguous, and not to be misunderstood. It cannot be made to apply to saloons.

If the Legislature, instead of enacting the laws it has in regard to the so-called Jim Crow cars, had provided separate cars for each race, it would not be possible to hold

that the screens now used are a compliance with the law.

For the same reason, the Legislature having directed that saloons for each race should be kept in separate buildings, it is not possible to hold that the requirement of the statute is complied with by selling to the whites from one counter and to the negroes from another in the same building although in separate apartments.

The defendant is conducting two separate, distinct enterprises, although the statute does not permit the conducting of the business in one building.

It is not possible under the statute to sell to whites and to negroes without conducting a separate business as to each. There must be a separate saloon conducted in a distinct building.

The next proposition pressed upon our attention by plaintiff is that one license will not authorize the sale of intoxicating liquors in both of defendant's saloons. A license must be paid for each saloon.

The complaint is that the law, Act 176, p. 236, of 1908, violates article 2 of the state Constitution and the fourteenth amendment.

The general provision of the state Constitution regarding due process of law and the inviolability of property rights is not overlooked or disregarded by the terms of the statute.

The state has the right to adopt measures of police to regulate the sale of intoxicants.

The Legislature has adopted statutes regarding the accommodation of each race in traveling, also in the schools, one separated from the other.

The legislation has been extended so as to include the further regulation of the liquor traffic.

The first two: The regulation in matter of traveling and of schools, having been pronounced legal by both this court and the federal Supreme Court, there is no ground

stated to declare the last measure, that relating to saloons, unconstitutional. The reasons which were upheld constitutional in the discussion in the Plessy Case, 45 La. Ann. 80, 11 South. 948, 18 L. R. A. 639, affirmed by the federal Supreme Court (163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256), have equal force in the present case.

Now as to the asserted special privilege, which permits the sale to white persons at the bar, but does not give a privilege to sell to colored persons at a separate bar in the same building:

This privilege, granted in accordance with a police regulation, is not violative of the fundamental law. The lawmaking power can make provision for separating the saloons.

In order to obtain relief on this ground, it would be necessary to make it appear that the provision for separate saloons is substantially different from the laws making provision for separate cars and separate schools.

The reasons suggested on that score are not at all persuasive. The lawmaking power is intrusted with discretion, with which the courts will not interfere except where it is very evident that the limitations of the fundamental laws have been disregarded.

The other ground of defense urged is that article 31 of the Constitution of the state has been violated or disregarded.

### The "One Object" Section of the Constitution.

It contemplates by its terms to regulate the sale of intoxicants to white persons, and contains all that is needful to indicate that their saloons shall be separate.

In other sections of the statute it regulates the sale of intoxicants to colored persons indiscriminately.

There is but one object—the saloons.

The separation of the customers is not another object separate and distinct from the first.

The lawmaking power evidently thought that it was advisable, that it would add to the enjoyment of each, that each should seek cups at different bars.

This could be accomplished without the adopting one law relating to white persons and another relating to colored persons, as the object is one and the same—at any rate, substantially.

To come to the end of this objection:

The title of the statute expresses the subject contained therein.

We imagine that to this point there will be no misunderstanding as to the court's interpretation. It is that the statute of 1908, commonly known as the "Shattuck Law," contemplates the payment of two licenses by saloon keepers who sell to both white persons and to colored persons. That purpose is made evident in express terms of the statute. The lawmaking power separates the two races, and at the same time requires two licenses, one from the saloon keeper who sells to whites, and the other from the saloon keeper who sells to the colored.

This brings us to the most serious ground of the controversy, viz., whether the state can exact the license from defendant in so far as he has exceeded the privilege to sell liquors by selling to the whites and to the colored in different apartments in the same building. In other words, is the state entitled to an additional license on the ground that defendant has exceeded his privilege under the license he now holds?

The question is propounded on behalf of plaintiff:

Can the state receive money from the defendant and not debar herself from prosecuting him criminally?

We will treat the question only as relates to the possibility in law of collecting the li-

cense. We are not of the opinion that the defendant can be made to pay two licenses.

The state must act in good faith and deal with the utmost fairness.

The purpose of requiring a license has received the attention of the authorities. They will not issue it to conduct a business not sanctioned.

In other words, it has been held that a license will not have the effect of protecting a license holder who violates the law.

We are of opinion that the license should neither be issued nor collected.

To sum up, in conclusion:

The saloon keepers wishing to sell to both whites and negroes must conform with the statute requiring them to conduct the business in separate buildings, and pay two licenses.

The fundamental laws are not violated by the statute.

No license can be required when the evident purpose would be to violate the law.

The defendants have raised a federal question. If there is anything in the question, another tribunal may grant them relief.

For different reasons than those stated by the district court, we have arrived at the same conclusion as to the decree.

For reasons here stated, the judgment of the district court is affirmed; costs of appeal to be paid by appellants.