By the Court.
 

 The relator asks for a writ of mandamus in this court under the provision of Section 12283, General Code, which authorizes a writ to issue “commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.” In order to obtain the relief sought the relator must disclose a case wherein no discretion is imposed upon the respondents in the performance of that duty; if discretion is imposed, we have frequently held that such discretion cannot be controlled
 
 *295
 
 by a writ of mandamus; and it has also been held by this court that, before tbe writ will issue, a plain dereliction of duty must be established by tbe relator.
 

 In tbe last analysis tbe question here to be determined is whether tbe regulations adopted by tbe respondents, who are Ohio State University officials, contravene the provisions of tbe State and Federal Constitutions. In their brief counsel for tbe relator concede “that tbe acts sought to be compelled of them (tbe respondents) are not enjoined by statute.” There has been no violation of any state law. With that concession we are in accord. Such being tbe case, although relator’s counsel disclaim tbe presentation of a constitutional question, in order to obtain a writ in mandamus tbe relator must show that she has been denied a substantial right guaranteed to her by our organic, fundamental laws; that she has been deprived of a constitutional right under our state or Federal Constitution. Section 1 of tbe Fourteenth Amendment of tbe United States Constitution provides that “No State shall make or enforce any law which shall abridge tbe privileges or immunities of citizens of tbe United States; nor * * * deny to any person within its jurisdiction tbe equal protection of tbe laws. ’ ’ Section 2, Article I, of tbe Ohio Constitution, stipulates that tbe government is instituted for tbe people’s equal protection and benefit; and, in respect to education, Section 7 of Article I provides that “it shall be tbe duty of tbe General Assembly to pass suitable laws * * * to encourage schools and tbe means of instruction.” In
 
 State, ex rel. Garnes,
 
 v.
 
 McCann,
 
 21 Ohio St., 198, at page 205, tbe learned judge, considering Article I, Section 7 of our Constitution, said: “It is left to tbe discretion of tbe general assembly, in tbe exercise of tbe general legislative power conferred upon it, to determine what laws are ‘suitable’ to secure tbe organization and management of tbe contemplated system of common schools, without express restriction * *
 

 
 *296
 
 The Ohio State University was established by special act of the General Assembly. Section 7942, General Code, reads: ‘ ‘ The government of the Ohio state university shall be vested in a board of seven trustees,” etc. Section 7948, General Code, reads: “The board of trustees may adopt by-laws, rules and regulations for the government of the university.” By virtue of these sections, in respect to this university, the General Assembly not only vested the government thereof in the respondent board, but specifically granted that board full power to adopt rules and regulations for its government. If such rules and regulations are reasonable, and not arbitrary; if they furnish similar, adequate facilities to the races; if both races enjoy similar educational advantages in the university; if they reasonably regulate the purely social status of students, it cannot be claimed that the constitutional rights of either race, white or colored, have been abridged.
 

 We come now to the instant case. The relator asks for a writ of mandamus commanding the respondents to admit her “to residence in the home management house as the same is usually conducted, and to make all the advantages, facilities and privileges thereof available to her without discrimination against her in any respect on account of her race and color.” The substantial facts presented by the pleadings are not in dispute. Upon the university campus there is a double building providing the housing of students pursuing the course of Home Economics. This building is under a single roof, divided into two halls or compartments separated by a partition, each hall being similarly and equally well equipped and furnished; each compartment accommodates six girls and a supervisor. The house is so managed that its student residents “buy, cook and dine together as a common enterprise.” The respondents’ answer alleges: “In such hall the young women usually live two in a room, with
 
 *297
 
 room mates of their own selection and have a common bath room and toilet facilities.” They also allege that “in such house the students arrange among themselves concerning the cooking and serving of meals, buying of food and carrying on all of the activities of a family circle, under the supervision of a supervisor from the faculty of the university.” The answer further alleges, and it is not denied, that the respondents have offered the relator quarters and opportunity to pursue her residence service in such house in one of its compartments which is “furnished and equipped in an equivalent and similar manner as to quality and quantity of furnishings as is the other compartment of the building,” in which the relator may perform the necessary laboratory work, dwell and entertain her friends and associates in a similar manner and under like circumstances permitted other students enrolled in the course.
 

 The relator has been denied no educational advantages or privileges that are not similarly used and enjoyed by other students; nor has she been denied the privilege of taking her degree, should she consent to occupy available space in the Home Economics house.
 

 On page 211, in the Ohio case,
 
 Garnes
 
 v.
 
 McCann, supra,
 
 the learned judge said: “Any classification which preserves substantially equal school advantages is not prohibited by either the State or federal constitution, nor would it contravene the provisions of either.” The relief that the relator seeks in this suit is such as to compel the respondents to grant her, not equal school advantages, but the same social intercourse. Under the provisions of Section 7948, General Code, the respondents had full authority to prescribe regulations that will prove most beneficial to the university and state and will best conserve, promote and secure the educational advantages of. all races. The purely social relations of our citizens cannot be en
 
 *298
 
 forced by law; nor were they intended to be regulated by our own laws or by the state and Federal Constitutions.
 
 Plessy
 
 v.
 
 Ferguson,
 
 163 U. S., 537, 551, 16 S. Ct., 1138, 41 L. Ed., 256;
 
 People, ex rel. King,
 
 v.
 
 Gallagher,
 
 93 N. Y., 438, 448, 45 Am. Rep., 232;
 
 Roberts
 
 v.
 
 City of Boston,
 
 59 Mass. (5 Cush.), 198, 209;
 
 The Civil Rights Bill,
 
 1 Hughes, 541, Fed. Cas., No. 18,258;
 
 Ward
 
 v.
 
 Flood,
 
 48 Cal., 36, 56, 17 Am. Rep., 405;
 
 Lehew
 
 v.
 
 Brummell,
 
 103 Mo., 546, 15 S. W., 765, 11 L. R. A., 828, 23 Am. St. Rep., 895;
 
 Martin
 
 v.
 
 Board of Education,
 
 42 W. Va., 514, 516, 26 S. E., 348. In speaking upon this aspect of the case the learned judge in
 
 Plessy
 
 v.
 
 Ferguson, supra,
 
 said: “The argument also assumes that social prejudices may be overcome by legislation, and that equal rights cannot be secured to the negro except by an enforced commingling of the two races. We cannot accept this proposition. If the two races are to meet upon terms of social equality, it must be the result of natural affinities, a mutual appreciation of each other’s merits and a voluntary consent of individuals. As was said by the Court of Appeals of New York in
 
 People
 
 v.
 
 Gallagher,
 
 93 N. Y., 438, 448 [45 Am. Rep., 232], ‘this end can neither be accomplished nor promoted by laws which conflict with the general sentiment of the community upon whom they are designed to operate. When the government, therefore, has secured to each of its citizens equal rights before the law and equal opportunities for improvement and progress, it has accomplished the end for which it was organized and performed all of the functions respecting social advantages with which it is endowed.’ Legislation is powerless to eradicate racial instincts or to abolish distinctions based upon physical differences, and the attempt to do so can only result in accentuating the difficulties of the present situation. If the civil and political rights of both races be equal one cannot be inferior to the other civilly or politi
 
 *299
 
 cally.” Were the case reversed, and had a white girl student, under the same circumstances, sought to compel social relations with a group of girls of another color we would feel compelled to deny her relief. The cases relied on by counsel for relator are distinguishable from this, since the relief therein sought was in no wise connected with the social status or with the social relations of pupils. The motion of the respondents for judgment upon the pleadings will be sustained. The writ of mandamus will be denied and the petition dismissed.
 

 Writ denied.
 

 Weygandt, C. J., Day, Allen, Stephenson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.