[Civ. No. 12593. Second Dist., Div. One. Nov. 14, 1941.]

CHARLES STONE et al., Appellants, v. BOARD OF DIRECTORS OF THE CITY OF PASADENA et al., Defendants; W. H. NICHOLAS, as Superintendent of Parks, etc., et al., Respondents.

Thomas L. Griffith, Jr., for Appellants.

Harold P. Huls, City Attorney, and Thomas W. Le Sage, Deputy City Attorney, for Respondents.

YORK, P. J.—Appellants, who are members of the Negro race, citizens, residents and qualified electors of the city of Pasadena (two of them being taxpayers of said city), sought by a petition in mandamus to compel the board of directors thereof, the city manager, the superintendent of parks and his employees, to admit appellants to the privileges and facilities of the municipal bath houses and swimming pool, commonly known as Brookside Park Plunge, at all times when said facilities are open to the public. It was alleged in the first amended petition for the writ of mandate that respondents "are charged by Article 14, section 1 of the Constitution of the United States, and Article 1, section 21 of the Constitution of the State of California, and section 51 of the Civil Code of said state, with the duty to afford equal accommodations, advantages and privileges to citizens within the jurisdiction of the State," but that respondents have "and do now deny petitioners equal accommodations, advantages and privileges, and to the equal protection of the law in the use and enjoyment of said bath houses and swimming pool at the Brookside Park Plunge at all times when the same is open to the public."

It was also alleged that "petitioners are of clean and moral habits; none of them is suffering from contagious or infectious disease or has any physical or mental defect or disability such as to make his admission to and use of said bath houses and swimming pool inimical, harmful or detrimental to the health, welfare or safety of other users thereof, or do said petitioners have any disability at all."

General and special demurrers to said first amended complaint were interposed by the superintendent of parks and

the board of directors of said city. The demurrer of the board of directors was sustained; the demurrer of the superintendent of parks was overruled, and he was given ten days within which to answer. Judgment of dismissal as to the board of directors was thereafter entered, and the cause was set for trial "on the issues raised by the first amended petition for writ of mandamus and the answers and return thereto of respondents W. H. Nicholas, Superintendent of Parks of the City of Pasadena, C. W. Koiner, City Manager of Pasadena, and Frank Hale and H. B. Rankin," the two last named being supervisor and cashier of the Brookside Park Plunge, respectively.

Before the first witness was sworn, respondents objected to the introduction of any evidence on the grounds that the first amended petition did not state a cause of action and that mandamus was not the proper remedy. Ruling on said objections was reserved by the court, and, subject thereto, evidence was introduced. Thereafter, on January 4, 1940, the court sustained respondents' objections to the introduction of evidence on the grounds advanced; granted respondents' motion to exclude evidence upon the same grounds, and ordered judgment in favor of "respondents W. H. Nicholas, Superintendent of Parks of the City of Pasadena, C. W. Koiner, City Manager of the City of Pasadena, Frank Hale and H. B. Rankin, sued herein as John Doe, and that petitioners take nothing in said cause."

Petitioners prosecute this appeal from said judgment urging that their amended petition, which sets forth in substance that their exclusion on account of their race and color from the municipal plunge in Brookside Park at all times when it is open to the public, except on one day of each week, sufficiently alleges a cause of action.

Respondents argue that "petitioners are demanding primarily equal social privileges, which are the subject of reasonable local regulation," in support of which they cite the case of *State ex rel. Weaver* v. *Board of Trustees of Ohio State University* (1933) 126 Ohio St. 290 [185 N. E. 196].

The cited case involved an alleged discrimination against a colored student at a state university to which both white and colored students were admitted. The particular student was the only colored student with the necessary qualifications who wished to take a course in home economics.

Said course was given in a "home management house," wherein the students resided together on terms of social equality, with two in a room, and common bathroom and toilet facilities, managing such building as their home where they received their friends, and receiving credit therefor as a necessary course for a degree in home economics. It was there held that equal educational facilities had been furnished when such colored pupil was offered quarters, and an opportunity to pursue her labors and service, in another apartment of the building furnished and equipped in a manner equivalent to that used by the white students where, under the direction of a supervisor, she might perform the necessary laboratory work, dwell and entertain her friends and associates in a similar manner and under like circumstances as were permitted to the white students enrolled in the same course, and obtain the necessary credits for her degree. In denying the writ of mandamus, the court said at page 198: "The relator has been denied no educational advantages or privileges that are not similarly used and enjoyed by other students; nor has she been denied the privilege of taking her degree, should she consent to occupy available space in the Home Economics' house. She has only been denied the social privilege of residing with white girl students and partaking in their family or communal life; of rooming, dining and sharing their common bathroom and toilet facilities." In the cited case, *it was admitted that the acts sought to be compelled of respondents were not enjoined by statute,* and that the school regulations, furnishing similar facilities and educational advantages to both white and colored students did not abridge the constitutional rights of either race. (Emphasis added.)

■ Obviously, the cited case is of little value in the instant situation, for the reason that the acts here complained of are expressly enjoined by the provisions of section 51 of the Civil Code, to-wit:

"All citizens within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating-houses, places where ice-cream or soft drinks of any kind are sold for consumption on the premises, barber shops, *bath houses,* theatres, skating rinks, public conveyances and all other places of public accommodation or amusement, sub-

ject only to the conditions and limitations established by law, and applicable alike to all citizens.'' (Emphasis added.)

Commenting upon said section 51 and also section 52 which permits an action for damages for a violation of the terms of section 51, *supra*, it was stated by the court in *Piluso* v. *Spencer*, 36 Cal. App. 416 [172 Pac. 412], at 419, as follows: ''The general intent and significance of the foregoing provisions are clear enough. The purpose, of course, is to compel a recognition of the equality of citizens in the right to the peculiar service afforded by these agencies for the accommodation and entertainment of the public. There is no doubt of the constitutionality of the provisions and of the sound public policy of such legislation. (*Greenberg* v. *Western Turf Assn.*, 140 Cal. [357] 363 [73 Pac. 1050].)''

Appellants cite the case of *Kern* v. *Commissioners of City of Newton* (1938) 147 Kan. 471 [77 Pac. (2d) 954], as one similar in point of fact to the instant case. There the plaintiff, a private citizen of African descent and color, sought by a petition in mandamus to compel the governing officials of the city of Newton to admit him to the privileges of a swimming pool constructed with funds procured by a sale of municipal bonds voted by the electors of said city in 1934. The application for the writ alleged that the bonds so voted were a charge on all the taxable property of the city, that petitioner was a taxpayer and that no arrangements had been made by the city commissioners to furnish swimming facilities or privileges for petitioner and that neither he nor other citizens of African descent were admitted to the municipal swimming pool at any time. In holding in favor of petitioner, the court there said (at page 960): ''He is deprived of the privileges of the swimming pool. He is a taxpayer, and as such he and his property are bound to pay the bonds issued to raise the money which built the swimming pool. He has as good a right to its privileges as any other citizen. Deprivation of the privilege of access to municipal recreation grounds established or maintained at the general taxpayers' expense, on account of race or color, is legally and traditionally offensive to the history of this state, and, although this court has repeatedly upheld statutes which sanction reasonable segregation of the racial stocks of this state, white and colored, we have steadfastly held to our

oft-repeated rule that the Legislature alone can authorize such segregation, as in the many school cases cited above."

Under the provisions of section 1085 of the Code of Civil Procedure, the writ of mandamus "may be issued by any court . . . to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or *to compel the admission of a party to the use and enjoyment of a right* or office to which he is entitled, and *from which he is unlawfully precluded* by such inferior tribunal, corporation, board or person." (Emphasis added.)

A proceeding in mandamus was successfully employed in *Piper* v. *Big Pine School District,* 193 Cal. 664 [226 Pac. 926], to compel the trustees of a school district and its teacher to admit an Indian child as a pupil. In the early case of *Ward* v. *Flood,* (1874) 48 Cal. 36, 47 [17 Am. Rep. 405], in which the writ of mandate was denied, it was stated: "The writ of *mandamus* is issued to compel the admission of a party to the enjoyment of a substantial right, from which he is unlawfully precluded. . . . " In said case it was held (at page 56) that "the exclusion of colored children from schools where white children attend as pupils, cannot be supported . . . except where separate schools are actually maintained for the education of colored children; and that, unless such separate schools be in fact maintained, all children of the school district, whether white or colored, have an equal right to become pupils at any common school organized under the laws of the State. . . . "

"*Mandamus* is a proper remedy for unlawful discrimination of the state in refusing to admit negro students to a law school maintained by the state. (*University of Maryland* v. *Murray,* (*Pearson* v. *Murray*), (1936) 169 Md. 478, 182 Atl. 590, 103 A. L. R. 706.)" (10 Am. Jur. 919, 1941 supplement.)

For the reasons stated, the first amended petition stated a cause of action against respondents, and, if the facts there alleged are all true, mandamus is the proper remedy to secure the relief sought. There are certain controverted issues which should be determined by the trial court, therefore, this court is without power to order the writ of mandate to issue.

The judgment is reversed and the cause remanded.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied December 8, 1941, and respondents' petition for a hearing by the Supreme Court was denied January 13, 1942.