*Supp. 888
 
 HULS, J.
 
 *
 

 Plaintiff, a 5-year-old Negro girl, by her guardian
 
 ad litem,
 
 appeals from the order and judgment of nonsuit; she claimed damages for violation of her civil rights under the provisions of Civil Code, sections 51, 52, 53 and 54, because of defendant’s refusal to enroll her in defendant’s school by reason of the fact that she was a Negro, and that she was discriminated against solely because she was a member of that race. At the trial it was stipulated that defendant is and always has been a private school.
 

 Plaintiff contends that a private school is within the meaning of the words ‘ all other places of public accommodation or amusement” in Civil Code, section 51, and that such denial creates a liability under the provisions of Civil Code, sections 51, 52, 53 and 54. Since sections 53 and 54 by their terms apply only to a person over the age of 21 years, they have no application here.
 

 The evidence clearly shows that the owner of the defendant school told the guardian
 
 ad litem,
 
 of the minor plaintiff that he could not admit Negroes, although a brochure from the school had been received by the guardian’s wife, upon which she phoned the school for information.
 

 Appellant contends further that the school is public in the sense that the state may regulate certain phases of it under the police power, involving a violation of civil rights because of race, further that the defendant school invites members of the public to attend and solely for financial support of the school. In view of the stipulation, these contentions are specious. It should be noted, also, that a system of common schools is required by the California Constitution by which a “free” school shall be kept up and supported by the Legislature (Const, art. IX, §5). The lawful existence of private schools is recognized, among other things, by a special exemption in the compulsory education law. Volume 44, Cal.Jur.2d 134, § 428; Education Code, section 16624.
 
 Piper
 
 v.
 
 Big Pine School Dist.
 
 (1924), 193 Cal. 664, 674 [226 P. 926]. By article IX, section 1, of the state Constitution, the advantages and necessities of a universally educated people as a guarantee and means for the preservation of the rights and liberties of the people has been declared: “A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people,
 
 the legislature
 
 shall encourage by
 
 *Supp. 889
 
 all suitable means the promotion of intellectual, scientific, moral and agricultural improvement.” (Emphasis ours.)
 
 Piper
 
 v.
 
 Big Pine School Dist., supra,
 
 page 668.
 

 The Legislature has provided for a system of common schools (Education Code). The education of the children of the state is protected and safeguarded by a state board of education.
 
 Piper
 
 v.
 
 Big Pine School Dist., supra,
 
 page 669. “The enjoyment of these privileges are enforceable rights vouchsafed to all who have a legal right to attend the public schools which cannot be enjoyed as a matter of right by those who, from choice or compulsion, attend schools without the control, supervision and regulation of the education departments of the state.” (P. 669.)
 

 The Legislature, in our opinion, has not expressly provided for these safeguards of education to those attending the private schools in the state, who are “exempted” by Education Code, section 16624, from attendance in the public schools. The only requirements are that such schools shall be taught in the English language, instruction in the several branches of study required in the public schools, the keeping of attendance records, the hours of attendance, and that the tutor or other person shall hold the proper valid state credential. (Ed. Code, §§ 16624, 16625.)
 
 Roman Catholic etc. Corp.
 
 v.
 
 City of Piedmont
 
 (1955), 45 Cal.2d 325, 333 [289 P.2d 438], “Parents have the right to send their children to private schools rather than public ones. ...”
 
 (Roman Catholic etc. Corp.
 
 v.
 
 City of Piedmont, supra,
 
 page 330.
 
 People
 
 v.
 
 Turner
 
 (1953), 121 Cal. App.2d Supp. 861, 865 [263 P.2d 685].)
 

 But beyond these legislative requirements and those upheld by our courts as just referred to, they have not gone. Therefore, the question is whether a private school is one of the “other places of public accommodation or amusement” within the meaning of Civil Code, sections 51 or 52.
 

 The California cases cited by appellant were under our civil rights statuteSj and those of other jurisdictions under similar statutes. The businesses referred to therein obviously were places of public accommodation or amusement similar to the expressly named places and of a similar kind of public accommodation or amusement.
 

 The settled rule of law is that the expression “all other places” means all other places of a like nature to those enumerated.
 
 Long
 
 v.
 
 Mountain View Cemetery Assn.
 
 (1955), 130 Cal.App.2d 328 [278 P.2d 945], While we have said
 
 *Supp. 890
 
 that Civil Code, section 51, “is to be given a liberal, not a strict, construction . . . this sweeping language [of the statute] does not cover ‘all places,’ however.”
 
 Lambert
 
 v.
 
 Mandel’s of California
 
 (1957), 156 Cal.App.2d Supp. 855, 856-857 [319 P.2d 469], citing
 
 Long
 
 v.
 
 Mountain View Cemetery Assn., supra
 
 and
 
 Coleman
 
 v.
 
 Middlestaff
 
 (1957), 147 Cal.App.2d Supp. 833, 834-835 [305 P.2d 1020], “The general intent and significance of the foregoing provisions are clear enough. The purpose, of course, is to compel a recognition of the equality of citizens in the right to the peculiar service afforded by these agencies for the accommodation and entertainment of the public.”
 
 Stone
 
 v.
 
 Board of Directors of Pasadena
 
 (1941), 47 Cal.App.2d 749, 753 [118 P.2d 866].
 

 In the court’s opinion a private school is not a place of public accommodation or amusement, nor is it a public place .of amusement or accommodation, within the meaning of Civil Code, sections 51 or 52. It is true that racial discrimination in public education is unconstitutional.
 
 Brown
 
 v.
 
 Board of Education of Topeka
 
 (1954), 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873, 34 A.L.R.2d 1180];
 
 Lucy
 
 v.
 
 Adams
 
 (1955), 350 U.S. 1 [76 S.Ct. 33, 100 L.Ed. 3], See also 32 A.G. (1959), 264, 268. Rights of racial minorities have gradually been extended.
 
 (James
 
 v.
 
 Marinship Corp.
 
 (1944), 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900] (discrimination by labor unions against Negroes);
 
 Thompson
 
 v.
 
 Moore Drydock Co.
 
 (1946), 27 Cal.2d 595 [165 P.2d 901] (labor union) ;
 
 Williams
 
 v.
 
 International Brotherhood of Boilermakers
 
 (1946), 27 Cal. 2d 586 [165 P.2d 903] (same) ;
 
 Perez
 
 v.
 
 Sharp
 
 (1948), 32 Cal. 2d 711 [198 P.2d 17] (miscegenation);
 
 Banks
 
 v.
 
 Housing Authority
 
 (1953), 120 Cal.App.2d 1 [260 P.2d 668], certiorari denied by U.S. Supreme Court, 347 U.S. 974 [74 S.Ct. 784, 98 L.Ed. 1114]. In general the extension of such rights has been based upon the discrimination exercised in businesses such as public service corporations or serving a general public purpose or where the public accommodation or amusement was public property or was being used in the exercise of a public function. The civil rights statutes have not been applied in the case of private or semiprivate uses. 9 A.G. 271, 272. It was early decided that a Negro was not denied any constitutional right by refusal of a private educational institution to admit him, apparently on the ground that the constitutional guarantees apply to state action rather than to private action.
 
 State
 
 ex rel.
 
 Clark
 
 v.
 
 Maryland Inst. for Promotion of Me
 
 
 *Supp. 891
 

 chanic Arts
 
 (1898), 87 Md. 643 [41 A. 126];
 
 Booker
 
 v.
 
 Grand Rapids Medical College
 
 (1909), 156 Mich. 95 [120 N.W. 589, 24 L.R.A. N.S.
 
 447];
 
 10 Am.Jur. 910;
 
 Kirkpatrick
 
 y.
 
 Williams
 
 (1949), 53 N.M. 477 [211 P.2d 506, 507] ; see 55 Am.Jur. 11, § 15; 10 Am.Jur. 909-910. Likewise in a review of state action the Supreme Court has held that it is invalid for courts to enforce restrictive covenants in deeds either by injunction or in actions for damages.
 
 Shelley
 
 v.
 
 Kraemer
 
 (1948), 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441] ;
 
 Barrows
 
 v.
 
 Jackson
 
 (1953), 346 U.S. 249 [73 S.Ct. 1031, 97 L.Ed. 1586], Schools organized pursuant to private trusts may not discriminate on the basis of race if the schools are operated and administered by a public trustee
 
 (Commonwealth of Pennsylvania
 
 v.
 
 Board of Directors of City Trusts of Philadelphia
 
 (1957), 353 U.S. 230 [77 S.Ct. 806, 1 L.Ed.2d 792]), because of the public character of the trusteeship.
 

 People
 
 v.
 
 Northwestern University
 
 (1947), 333 Ill.App. 224 [77 N.E.2d 345], held a private educational institution not to he in a business essentially public in its nature rendering the corporation so engaged subject to public control as a telegraph and .telephone company or a virtually monopolistic warehouse, and stated that the admission of the relator rested in the discretion of the university, that he. had no right to be admitted and that courts have refused to coerce private educational institutions in the exercise of lawful discretion. The ease was not based on race, color or creed.
 

 Appellant claims that the problem here is not one of distinction between public and private schools but whether a Negro applicant to a private school may be denied admission because of race. Of course the latter is the ultimate question, but it must be decided in part on the distinction between a public and private school in view of appellant’s contention that discrimination of any kind is repugnant to the public policy of the State of California.
 

 To appellant’s contention that any distinction or discrimination based upon race is repugnant and void under the Constitution of the United States or of this state, this court cannot agree. While it is true that in
 
 James
 
 v.
 
 Marinship Corp., supra,
 
 25 Cal.2d 721, 740, the court referred to Civil Code, sections 51 and 52, as being merely declaratory of common law, and stated: 11 The analogy of the public service eases not only demonstrates a public policy against racial discrimination but also refutes defendants’ contention that a statute
 
 *Supp. 892
 
 is necessary to enforce such a policy where private rather than public action is involved,” the only question decided by the court in the case was that when a labor union which has attained a monopoly of the labor supply through closed shop agreements, such a union, like a public service business, may not unreasonably discriminate against Negro workers for the sole reason that they are colored persons.
 

 We do not believe that the doctrine of public policy established by
 
 James
 
 v.
 
 Marinship Corp., supra,
 
 or
 
 Thompson
 
 v.
 
 Moore Drydock Co., supra,
 
 27 Cal.2d 595,
 
 Williams
 
 v.
 
 International Brotherhood of Boilermakers, supra,
 
 27 Cal.2d 586, applies to a matter of private relationship such as that here before us, since the defendant school has no monopoly and since the Legislature has specifically declared the public policy of the state in regard to discrimination in particular locations and it is the office of the Legislature and not of this court to make any additional enumerations which may be desirable.
 
 Coleman
 
 v.
 
 Middlestaff, supra,
 
 147 Cal.App.2d Supp. 833.
 

 In our opinion private schools should be entitled to contract or refuse to contract with students of their choice for whatever reason if such contract or refusal does not fall within the constitutional or statutory proscription against discrimination on the basis of race or color. We do not find any authority that such refusal does so. The judgment and order are affirmed.
 

 Bishop, P. J., and Swain, J., concurred.
 

 *
 

 Designated by
 
 the
 
 Chairman of the Judicial Council for the period commencing March 16, 1959.